[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11269
Non-Argument Calendar
_____

D.C. Docket No. 3:11-cr-00058-CAR-CHW-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

ANDREW WINGO,
a.k.a. Andy Wingo,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(September 17, 2012)

Before HULL, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Andrew Wingo appeals from the district court's order denying his appeal for

pretrial release and supervision under the Bail Reform Act of 1984, 18 U.S.C.

§ 3145(b).  After thorough review, we affirm.

I.

In November 2011, Wingo was indicted on charges of conspiracy to defraud

the United States, money laundering, conspiracy to commit money laundering, and

interstate transportation of stolen property.  At an initial appearance, a magistrate

judge released Wingo on bond pending trial.  The magistrate judge imposed

several conditions of release, including that Wingo "refrain from possessing a

firearm, destructive device, or other dangerous weapons."  The magistrate judge

warned Wingo that the condition "means not in your house, not on your person,

not in your car as long as this bond is pending."

On January 6, 2012, Wingo's probation officer filed a Petition for Action on

Conditions of Pretrial Release, alleging that Wingo violated the conditions of his

pretrial release because he was found to be in possession of a firearm or other

dangerous weapon.  At a hearing on the matter, Wingo stipulated that he "did

possess three firearms and/or dangerous weapons at his residence . . . including a

Thompson/Center Arms .50 caliber Thunder Hawk[,] . . . a Colt automatic .25

caliber handgun and a Sturm Ruger & Company, Inc. Mini 14 .233 caliber as

evidenced by the seizure of said firearms by the probation office."

2

Wingo's wife testified at the hearing that she and Wingo attempted to remove all the firearms from their home after Wingo was indicted. She explained that Wingo suffered from dementia, insomnia, and headaches, for which he was prescribed psychotropic medication. According to Mrs. Wingo, the medications caused Wingo to wake at night and move things in the house around without recalling these incidents the next morning. Mrs. Wingo also testified that she and Wingo had three minor children living in the home, and that Wingo's weapons were often in plain sight. Wingo's probation officer testified that she feared for her safety when she visited Wingo's home because of the number of weapons she saw in the house.

Based on this testimony, the magistrate judge found by clear and convincing evidence that Wingo violated the conditions of his pretrial release. The judge expressed concern for the children's safety considering the weapons Wingo possessed and his mental infirmities. The judge accordingly found that no condition or combination of conditions would assure that Wingo would not pose a danger to the community. And the judge concluded that Wingo was unlikely to abide by any condition imposed based on his failure to conform to the original terms, his history of possessing an extensive weapon collection, and his mental condition. The magistrate judge therefore revoked bond and ordered that Wingo

3

be detained pending trial.

Wingo filed a motion for reconsideration of the order of detention, which the magistrate judge denied. Wingo then appealed to the district court, pursuant to 18 U.S.C. § 3145(b), for review of the magistrate judge's order. The district court denied the appeal and affirmed the order of detention. This is Wingo's appeal.

## II.

We subject the district court's order affirming an order of detention under the Bail Reform Act of 1984, 18 U.S.C. § 3148(b), which presents mixed questions of law and fact, to plenary review. *United States v. Quartermaine*, 913 F.2d 910, 915 (11th Cir. 1990). "Purely factual findings, however, will not be disturbed unless they are clearly erroneous." *Id.* "A finding of fact is clearly erroneous only when a reviewing court is left with the definite and firm conviction that a mistake has been committed." *United States v. Edmondson*, 791 F.2d 1512, 1514-15 (11th Cir. 1986).

## III.

Under the Bail Reform Act of 1984, a court may revoke a person's pretrial release if, after a hearing, the court finds "clear and convincing evidence that the person has violated any . . . condition of release" and that "there is no condition or combination of conditions of release that will assure that the person will not flee

4

or pose a danger to the safety of any other person or the community; or the person is unlikely to abide by any condition or combination of conditions of release."  18 U.S.C. § 3148(b)(1)(B), (b)(2).  To determine whether a condition or combination of conditions of release will assure that the person will not flee or pose a danger to another person or the community, the court must consider:  (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person," including the person's physical and mental condition; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).

Wingo first argues that the court erred in revoking his pretrial release because he did not willfully violate the terms of his release.  He submits that his dementia, insomnia, and severe headaches caused him to mistakenly violate the terms of his release.  But nothing in the statute requires that the person's violation of a condition of release be willful.  Moreover, Wingo conceded that he "did possess three firearms and/or dangerous weapons at his residence," which expressly violated the term of his pretrial release that he "refrain from possessing a

5

firearm . . . or other dangerous weapons."[1]  This condition of pretrial release was also without an intent requirement.  Thus, Wingo violated the terms of his pretrial release regardless of whether he did so willfully.

Wingo next contends that the district court erred in finding that he posed a threat to society sufficient to warrant revocation of his pretrial release.  Specifically, he contends that neither the magistrate judge nor the district court heard evidence establishing that he had a history or predisposition to violence because he has never harmed anyone with his weapons.  Instead, he argues, he possessed his weapons lawfully, for sporting and protection.  Even if Wingo has never harmed anyone, however, the district court's conclusion that Wingo posed a danger to the community was not clearly erroneous in light of testimony that Wingo possessed several weapons in his home despite the presence of three minor children and the probation officer's testimony that she feared for her safety at Wingo's home.

And the district court did not clearly err in finding that no condition or combination of conditions would assure the safety of the community in light of the

---

[1] This stipulation, to possession of "firearms *and/or* dangerous weapons," dispenses with Wingo's argument that the Thompson/Center Arms .50 caliber rifle was not technically a firearm.  Wingo conceded that the rifle was either a firearm or a dangerous weapon, and either of these violates the terms of his pretrial release.

6

concerns the magistrate judge expressed.  Importantly, Wingo does not challenge the court's second finding, that he was unlikely to abide by any conditions the judge imposed.  Thus, even if the court could have imposed conditions that might have ensured the safety of the community if Wingo complied, there is ample evidence in the record that he would be unlikely to do so.  Wingo failed to comply with the condition that he refrain from possessing firearms or dangerous weapons the first time.  And, based on his wife's testimony that he had dementia, insomnia, and often exhibited behaviors that he could not control or remember, it was reasonable for the court to conclude that he would be unlikely to comply with additional conditions imposed.

Because we conclude that the district court did not clearly err in affirming the magistrate judge's order of detention, we affirm.

**AFFIRMED.**